PER CURIAM.
Appellant, David Wayne Kelso, appeals an order summarily denying his Florida Rule of Criminal Procedure 3.850 motion, in which he raised one claim of newly discovered evidence and two claims of ineffective assistance of trial counsel. We affirm in part and reverse in part.
A jury found Appellant guilty of capital sexual battery and lewd or lascivious conduct for acts he committed on a ten-year-old girl in April of 1999. At trial, the jury essentially had to decide whether it believed the victim, who admitted that she had previously lied about adults inviting her to watch them have sexual intercourse, or Appellant, who admitted being alone with the victim for 15 minutes on the day in question but otherwise denied all of the allegations. The State argued that the jury should believe the victim, because there was no way that she could have known about the things she described unless Appellant actually did them to her. Furthermore, the State asserted that Appellant was less credible because he had a reason to he, while the victim had no incentive to lie.
We must accept Appellant’s sworn allegations as true, unless they are refuted conclusively by the record. See Peede v. State, 748 So.2d 253 (Fla.1999). According to Appellant, just a few weeks after he was sentenced, another man was arrested and charged with committing similar acts on the same victim. This man allegedly confessed and admitted that he had had an ongoing “relationship” with the victim, which included paying her money each week for her silence. Thus, according to Appellant, this evidence severely discredited the State’s arguments that: 1) the victim was an innocent child who used innocent language and was an otherwise normal girl except for the fact that she had been subject to one horrible, fifteen-minute attack by Appellant; 2) the only way that the victim could have known about the things she described is if Appellant actually did them; and 3) the victim had no incentive not to tell the truth. Had Appellant known of this ongoing relationship between the victim and another man, he could have presented evidence demonstrating that: 1) the victim’s portrayal of an innocent girl at trial lacked credibility, 2) perhaps the events did happen but the victim changed the name of the perpetrator,[1] and 3) the victim was lying about the identity of the perpetrator in order to protect this other man or her source of income.
Recently, the Florida Supreme Court addressed the standard of review for claims of newly discovered evidence:
In Jones, this Court articulated a two-step inquiry for determining whether a defendant is entitled to relief for newly *1113 discovered evidence. First, the facts must have been unknown at the time of trial and be such that they could not have been known by the exercise of due diligence. The second prong, which this Court referred to as the “probability standard,” requires that “in order to provide relief, the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial.”
... As the Fourth District has correctly pointed out, there may be cases where the newly discovered evidence is “obviously immaterial” to the verdict. However, ordinarily an evidentiary hearing is required for the trial court to properly determine, in accordance with Jones, whether the newly discovered evidence is of “such nature that it would probably produce an acquittal on retrial.” In making this determination, “the judge will necessarily have to evaluate the weight of both the newly discovered evidence and the evidence which was introduced at the trial,” so that the appellate court can “fully evaluate the quality of the evidence which demonstrably meets the definition of newly discovered evidence.”
McLin v. State, 827 So.2d 948, 956 (Fla.2002) (citing Jones v. State, 591 So.2d 911 (Fla.1991)) (citations omitted).
In this case, the fact that another man would be arrested, charged, convicted, and sentenced all subsequent to Appellant’s conviction and sentencing could not have been known at the time of trial. Thus, the first prong of the test is satisfied. As for the second prong, the evidence presented by Appellant is not “obviously immaterial.” Thus, the trial court should have conducted an evidentiary hearing.
As for the ineffective assistance of counsel claims, we find them both to be without merit. In the first claim, Appellant alleged that defense counsel should have called the 19-year-old man to whom the victim first reported her allegations against Appellant, because his account of what the victim said differed from the victim’s trial testimony. Not only did she use explicit terminology in her description, but she also described familiarity with more acts than just those that she accused Appellant of committing at trial.
We find that Appellant has not demonstrated that he was prejudiced by counsel’s failure to call this witness to testify. It is only in light of the newly discovered evidence that it appears that counsel’s performance was deficient or that Appellant was prejudiced by the decision. At the time of the trial, defense counsel had no basis for arguing that someone other than Appellant committed the acts, so there was no reason to present even more evidence of the bad acts that Appellant allegedly committed. It is clear from the record that counsel investigated this other witness and specifically used the State’s failure to call him in its case-in-chief against it. Thus, even if Appellant were prejudiced by the failure to call this witness to testify, this is one of those few cases in which counsel’s trial strategy is apparent from the face of the record. Accordingly, we affirm the trial court’s denial of this claim. Finally, we affirm the trial court’s denial of Appellant’s second ineffective assistance claim without discussion.
AFFIRMED in part; REVERSED in part; and REMANDED for an evidentiary hearing.
ALLEN, C.J., BENTON and HAWKES, JJ., CONCUR.

. The person to whom the victim first said anything was the 19-year-old younger brother of the man who was subsequently convicted, and, at the time she first told the story, she was trying to convince this younger brother to become her boyfriend. She told him that she had been with an older man, whom she said was Appellant, and that he had taught her how to do several things. Given her purpose in telling the story, there would be a lot of incentive to change the name of the "teacher” to someone other than the brother.